Good morning people of the state of Illinois, this is Gabriel Carter, 4090309. For the appellant, Mr. Shiffman, for the appellee, Mr. Majors, you may proceed. Justice Knack, may it please the court, counsel, I appear here this morning for Gabriel Carter, who was convicted of the class one offense of unlawful possession with intent to deliver a cocaine. It was a non-probationable offense for which the possible range of sentences was four to 30 years. Ultimately, Mr. Carter received a sentence of 12 years in the Department of Corrections. Mr. Carter initially appeared in court and entered a plea of guilty to that offense, and it was after that plea of guilty that his journey into kind of a legal never-never land began for a very short period of time. This case reminds one of the words of the famous poet, James Whitcomb Riley, who said, when I see a bird that walks like a duck and swims like a duck and quacks like a duck, I call that bird a duck. Mr. Carter entered a plea of guilty and was given an order that had the following terms and provisions in it. It's contained in our opening brief in the appendix. I'm not going to read all of the conditions. I agree to participate in the drug court program for a period of up to 36 months, during which time sentencing will be deferred pending successful completion of the program. I agree to fully cooperate with and follow the instructions of the drug court. I agree to obey all laws and not consume, use, or have in my body the presence of controlled substances or alcohol. There are 21 conditions in a three-page document that looks like probation, walks like probation, acts like probation, and in fact, is probation. Now, I want the court to be very clear. This is not a challenge to the Drug Court Act or the drug court proceedings. Drug court proceedings, drug courts have been created all across the state of Illinois. We're not challenging those in this case. But drug courts are courts, and courts follow the law. And the impact of this case and the impact of the proceedings in this case are plain and simple. Mr. Carter entered a plea of guilty to a non-probationable offense and received a sentence of probation. His sentence was illegal. And this court has spoken to what is the impact of an illegal sentence. And that is that Mr. Carter has, an illegal sentence is void. Mr. Carter has the right to re-plead because he essentially received a void sentence. He has the right to go back to the trial court, enter a new plea, and begin the proceedings all over. Justice Appleton, I believe, was the author of People v. Anderson. And in People v. Anderson, he recognized that the drug court program is a form of conditional liberty, like supervision, probation, or parole. And that's what happened here. That's exactly what happened. Mr. Carter entered his plea of guilty. And then the trial court said, all right, you're going to the drug court. Here are the terms and conditions of what you're going to have to do. And you're going to have to follow those terms and conditions. Granted, he did not follow those terms and conditions. He was back before the court twice. And it was the second time that he was back that the court said, no, we're not going to allow you to stay in the drug court. You're going to be sentenced to 12 years in the Department of Corrections. But for a period of time, he was on what was essentially probation. And no matter what you call it, it was probation. And every step of the way in his proceeding, all the parties, the judge, the state's attorney, his counsel, acted as if he were on probation. When he came back to court, at one point the state's attorney said, we have to proceed in this fashion as if it were a petition to revoke. And that's because of the authority of People v. Anderson. So Mr. Carter was on probation. His plea was improper. Now, the court may be asking, or maybe at least thinking, well, what could have been done here? Is there any way that Mr. Carter could have proceeded in a fashion that is, I believe, consistent with the Drug Court Act? Well, I would suggest two things. First of all, with respect to the post-adjudicatory phase that the Drug Court section of the Drug Court statute talks about, the simple way to proceed in this case would have been for the state to reduce the charges to a probationable offense, allow Mr. Carter to plead guilty, place him on this drug court program that was, in fact, probation, and if he violated a term or condition of that probation, have a petition to revoke his probation, and then sentence him if he violated a term or condition of probation. But the court can't have it both ways. The court can't say, we're going to have you plead guilty to a non-probationable offense, so we can leave that possible 30-year sentence hanging over your head, and then put you in a probation setting in such a case. Is there a way for the court to keep that 30-year sentence, if that's what they wish, that class one sentence, hanging over Mr. Carter? Certainly. And they do that by having Mr. Carter in a pre-adjudicatory phase. That's what the Drug Court Act contemplates. There are two options, pre-adjudicatory, post-adjudicatory. And the Drug Court Act nowhere says that all the other sentencing laws, all the other sentencing options need not be followed. They could have placed Mr. Carter in a pre-adjudicatory proceeding. They could have done everything that they did here. And if he violated a term or condition of that pre-adjudicatory phase, then they could have said, all right, we're going to the next step. We're going to have either a trial, or we're keeping the class one felony in place here. And now you can either plead to that, or you can plead not guilty, and we'll have a trial. But what they can't do is what they did in this case, which is cut the baby in half, have it both ways, however you want to phrase it. They can't keep this probation. They can't create a sentence here that the legislature didn't create. The legislature created a sentence for Mr. Carter's case. It was a class one felony for which he could not receive probation. The circuit court created a new remedy for Mr. Carter. They created a crime, a plea, a case for which he could, in fact, receive probation when probation was not an appropriate sentence. Would you have any quarrel with this if the statute permitted it? No. So it's not a policy. It's that if they want to do this, then the law needs to be written differently. If they want to do it, the legislature has to say, we will allow people who commit a class X or a class one drug offense for which probation is not an appropriate disposition, or indeed there could be cases where because of a prior record, a defendant could not perhaps receive probation even for a class two. If the legislature wants to add something into the Drug Court Act that says those dispositions are appropriate, those can be done by trial courts, I don't have a problem with that. But we have a problem here where this disposition is not in any way authorized by the statute, either the Drug Court statute or any other statute that I'm aware of. Well, didn't the legislature essentially do that under the eligibility section 166-20? I don't think so. And only upon the agreement of the prosecutor and the defendant with the approval of the court, it lists the various crimes. I don't know that any of that in any way says that the defendant can receive an illegal sentence, even if he's admitted to drug court. I don't read it that way, Justice Turner. If there's something in that section that says that this sentence could be authorized. Well, because it's not excluded would be the response. It's not excluded. It's also not included. Under that theory, Justice Turner, and perhaps this may be an extreme hypothetical, but under that theory, under that reading, if Mr. Carter had been charged, let's say, with a Class 4 felony, and Mr. Carter had come to the court and said, I would like to be considered for drug court. And the court said, no, your record is too long. I don't think you're a good risk for drug court. If Mr. Carter had said to the court, I have a proposal for you, and here's my proposal. I'm so confident that I can succeed in drug court that I will plead guilty to this Class 4 felony with the understanding that if I do not successfully complete drug court, you can sentence me to 12 years in prison. That's an illegal sentence. Now, that sentence, that's not provided for in the Drug Court Act. But clearly, we would not allow a defendant to enter into a plea agreement like that because it's an illegal sentence. And an illegal sentence is an illegal sentence requires the plea to be vacated. That's the authority of this court. And that's the only remedy available under these circumstances. And again, I'm not quarreling with drug court. That's not the issue here today. But drug courts must follow the law just as any other court. And under these circumstances, I think Mr. Carter is entitled to have his plea of guilty vacated and to have this case be mandated to the circuit court for proceedings beyond that, the vacation of his plea. If there are no other questions, thank you.  Mr. Major? May it please the court, your honors, Judge Shiffman. While listening to my opponent, I noticed that the Drug Court Act, which the court already commented on, 730.166 and following, which our position is created the power and the jurisdiction over this particular section. And only excluded certain offenses, which are listed as Justice Turner already pointed out in paragraph number four. I noticed that in those exclusions are criminal sexual assault. And then if you go back to 532F, which counsel's talking about, you go down to H, it says criminal sexual assault. But I think that's real telling that the legislature, although it forbid probation for that offense, it listed it here in paragraph four. So it knew what it was doing. And the only offenses it wanted excluded from the Drug Court Treatment Act are listed there. And I think you have to read these statutes to give them harmonious effect. And when you do that, you find that this section was intended to address the causal connection between drugs and criminal behavior. And it was intended to apply to one convicted of a class two or greater with the prior class two or greater. Counsel said that, I can't remember his exact words, but the legislature did not say specifically that we're excluding 2F from this. Well, in a way it did. If you read the purpose paragraph, the opening paragraph, which I'm not going to waste anybody's time by reading it, but it says, in effect, in layman's language, putting these guys in jail doesn't work. Let's try something else. If they're only coming in here because of a drug problem, let's try something else. Let's turn it over to the local courts and let them try something else. And these are the following conditions and these are the following exclusions. And 2F is not there. So it's covered. I mean, that's my argument in a nutshell. Any questions? Thank you. Thank you. Well, the statute that accepts certain offenses from the Drug Court Act does so for a reason that has nothing whatsoever to do with drugs. It has to do with prior criminal history and crimes of violence. We don't want people who have previous records for violent crimes perhaps being allowed into a drug court situation. If, in fact, it's only drug court people that we're dealing with or drug offenders, possession offenders, or perhaps assail offenders, we want to have them in a drug court proceeding. Did I understand him, Mr. Majors, though, to make the point that you've got an offense that's already non-probationable and then you list it in the exclusion? Well, there are some crimes, though, and as I look at them, there are some offenses in the exclusions that are probationable. But if there are any in there that are not anyway, why list them again as an exclusion? Well, no, no, it's not a question of exclusion. It's a question of a legal sentence. The Drug Court Act nowhere says, oh, by the way, we're going to allow people who do not receive probation or are not eligible for probation to be placed on probation. There are many drug offenses for which probation is not an offense, is not a sentence, is not a disposition. Mr. Carter happened to have one of those. And under those circumstances, to then say, but we're going to allow him to plead guilty and receive what is, in fact, a sentence of probation, is not what the legislature could have intended. They intended for people to go into a very structured environment, an environment consistent with almost an intensive probation, if you might. And if there was a violation, then they would be dealt with accordingly. All I'm suggesting is that the language of the act itself, if we accept this argument that, well, if the statute didn't provide for probation, then it's not probation, then why have a pre-adjudicatory phase? I think it's just as logical to argue that that's what the legislature intended. By this pre-adjudicatory phase, before a plea of guilty, before a judgment, before a sentence, in certain cases, we're going to place people in this drug court, their program. And if those people facing a very lengthy possible prison sentence and no possibility of probation do not comply with the terms and conditions, then we can deal with the case accordingly. But once you accept the plea, once you say to a defendant, your plea of guilty is accepted, to now engage in the proceeding that was engaged in here is inappropriate. Because it's one of two things. Either it's probation without following their probation, or it's a suspended sentence where the court has no authority to do that either. So in either circumstance, it's an illegal sentence. And under the circumstances, Mr. Carter should be allowed to enter anew. What was Mr. Carter's prior conviction? I think Mr. Carter had a prior drug conviction. He also had, interestingly enough, Justice Turner, as I recall, he had a conviction for battery, I believe it was, as well. That may have also rendered him ineligible for this process. But the court didn't consider that. But he had a prior drug offense that I think is what triggered, I can't recall now specifically, but that may have triggered his non-probationable status. But he did have a prior drug transaction. I'm pretty sure it was a drug offense. And that may have been the reason why he was not eligible for probation. Why is it that we should vacate the plea and set it back for a new plea? Because it was an illegal plea. He pled guilty. It was a negotiation. Well, no, actually, Justice Appleton, it really wasn't a negotiation. It was only negotiated in this sense. It was a plea of guilty with the understanding that he was going to be placed in drug court. Now, in fact, he was told, if you successfully complete drug court, we're going to bring you back in sentence. It's illegal for one of two reasons. Reason number one, because the sum and substance of what happened here was that he was placed on probation when probation was not an appropriate sentence. That's the illegality of the sentence. Well, yes, and we've discussed that. It may also, one could argue at least, be illegal because no sentence was actually... If you were to suggest that this drug court order is not, in fact, probation, and if you were to say, as the trial judge said at the time that he imposed, that he accepted the plea, what we're going to do is suspend sentencing for, in this case, pursuant to that order, three years. I would also suggest that that is not a legal sentence either, because if this court is going to allow trial judges to suspend sentences for up to three years, we could have a serious problem on our hands. Here's the problem, Justice Appleton, I think in a very brief way. All of us have perhaps remembered the days in the 70s when every court in Illinois had something they called supervision that the legislature had never contemplated. Some courts said, we're going to delay, we're going to continue your case for a year and we'll see what happens. Some courts said, we're going to let you plead guilty, but we won't sentence you for a year. Some courts said, if you don't have any trouble for a year, you can come back and we'll expunge your record. Every county did it differently. Finally, the legislature came in when courts started to look at those cases and said, you know, we need to create a statute here that deals with this problem. And the supervision statute was, in fact, created. I'm suggesting to the court that that's what's happened here. There is a gap between the drug court practice and the legislative intent and the legislative classification of sentences. And that's what needs to be addressed. Thank you. Thank you.